## JAMES DESEARN v. D. BABERS.

1. CHANCERY. *Jurisdiction to vacate judgment at law.*

A chancery court has no power to vacate a judgment at law based upon the same presentation of the case as that made in the chancery suit.

2. SAME. *Judgment at law. Set-off acquired after action commenced.*

A party against whom a judgment at law has been rendered is not entitled to have demands acquired by him after the commencement of the action at law set off against such judgment by a court of chancery, where he fails to show any other special ground therefor than the insolvency of his adversary in the judgment.

APPEAL from the Chancery Court of Wilkinson County.

HON. LAUCH McLAURIN, Chancellor.

The bill in this cause, filed on the 1st day of April, 1884, by D. Babers against James Desearn, alleges in substance the following facts: The complainant was a merchant and the defendant a planter, and the latter bought plantation supplies and merchandise from the former during the years 1877–8–9, and in May, 1880 gave his note to the complainant for one thousand six hundred and twenty-one dollars and thirty-seven cents in settlement of his indebtedness up to the 1st of January, 1880. During the year 1880 the defendant became indebted to the complainant in the sum of eight hundred and fifteen dollars and ten cents upon an open account. The complainant brought an action in the circuit court against the defendant upon the note and open account referred to. The defendant plead payment and gave notice of his claim of a set-off for one hundred bales of cotton of the value of five thousand dol-

lars. That case was first tried in April, 1882, and a judgment was rendered against the plaintiff for three hundred and forty-nine dollars and sixty-three cents. A new trial was granted, and the case was again tried in October, 1882, when the defendant recovered a judgment for three hundred and twenty dollars. Another new trial was granted, and in October, 1883, a third trial resulted in a verdict of one thousand five hundred dollars for the defendant. At the first two trials the defendant and J. J. Cage, his agent and manager, testified that in 1880 defendant delivered to plaintiff one hundred and twelve bales of cotton, thirty-four of which should have been credited to the defendant, and the remainder belonged to laborers with whom the plaintiff dealt directly in 1880 at defendant's request. But at the last trial the defendant and his witness, Cage, fraudulently and falsely testified that all of said one hundred and twelve bales of cotton belonged to the defendant, because of the indebtedness of said laborers to the defendant and should be credited to defendant, and the result was that the jury took the eighty-three bales of cotton credited to said laborers and applied the same to defendant's credit, and thus produced a balance in favor of the defendant of one thousand five hundred dollars. The said laborers were not indebted to the defendant at all, but they did owe plaintiff more than the value of said eighty-three bales of cotton, and it had been delivered to plaintiff in pursuance of the defendant's agreement to see that plaintiff should get it, and had been credited to the accounts of said laborers. The defendant was security for the payment of the debts of said laborers, and even if he was entitled to all of the cotton he owed plaintiff the value thereof on account of his said suretyship. The plaintiff had no opportunity to make a defense against the fraudulent claim of defendant set up at the last trial, because he was deceived, misled, and taken by surprise, as such claim had not been made at either of the preceding trials, and positive admissions to the contrary had been made at both of said trials. Plaintiff's residence was twenty miles from the place of trial, and he had no time to procure witnesses and get his written evidence to show the falsity of the claim set up by the defendant at said last trial.

By reason of the statute forbidding the granting of more than two new trials, the complainant was without remedy at law against the judgment obtained by the defendant by means of fraud as above stated.    Complainant appealed from said judgment to the supreme court, but it was by that court affirmed, and the defendant is about to cause a *fieri facias* to issue upon said judgment, and will do so unless restrained by the chancery court.   The complainant holds a promissory note against defendant for two hundred and eighty-five dollars and interest, which he acquired after the commencement of the action at law against the defendant.   And after the rendition of the judgment therein complainant acquired and now owns a promissory note of defendant for nine hundred dollars with interest, and defendant, as surety for the laborers aforesaid, is indebted to complainant in the further sum of six hundred and eighty-six dollars and forty-three cents.   Defendant is utterly insolvent.

The prayer of the bill was that the defendant be enjoined from proceeding under his judgment at law, and for a decree of the chancery court allowing complainant the credits claimed by him against the defendant, and settling finally the controversy between the parties without regard to said judgment at law.

The defendant answered the complainant's bill, claiming that the judgment at law was just and correct, denying that it had been obtained by fraud or that the plaintiff was surprised by the defendant's claiming all of the one hundred and twelve bales of cotton, and stating that defendant's claim and testimony in respect to said cotton was the same at the two preceding trials that it was at the last; denying that the defendant was surety for the debts of laborers, as charged in the bill, and stating that they were indebted to him, and that the eighty-three bales of cotton had been acquired by him in satisfaction of such indebtedness; denying that defendant had ever promised to deliver or see delivered to complainant any cotton in payment of the accounts of said laborers, or that any cotton was so delivered by the defendant; denying that he is indebted to complainant as surety for said laborers or on any other account, and claiming that his two notes acquired by complainant after the institution of the action at law had been paid before they passed

into complainant's hands. The answer also claims that the chancery court has no jurisdiction to reopen the controversy closed by the judgment at law.

The defendant's answer was filed on the 5th of September, 1884. On the 12th of January, 1885, the defendant made a motion to dissolve the injunction which had been granted on complainant's bill. Upon the hearing of this motion on the 16th of January, 1885, the complainant read his own affidavit and those of two other persons. The defendant read his affidavit and that of another person. All of these affiants were witnesses in the trials of the action at law. There was no evidence offered except the affidavits referred to, but the complainant in his affidavit says " that he had witnesses summoned for the purpose of taking their depositions in support of the allegations of his bill of complaint, but that he was taken suddenly ill while in Woodville, on the 12th of December, 1884, and thereby prevented from taking testimony or testifying himself, his presence being necessary at such taking, and that he was called to New Orleans immediately afterward by imperative business demands, and was otherwise prevented from taking testimony before the present term of the court."

The motion to dissolve the injunction was overruled and the defendant appealed.

*D. C. Bramlett,* for the appellant.

The bill presents no equity for relief against the judgment at law. All the averments upon which the claim for such relief is based really amount to nothing more than a charge of perjury. Let us see how far this impairs the judgment. And upon that the rule is thus laid down : " Proceedings in equity to vacate or otherwise impair a judgment at law, on the ground that it would not have been rendered but for the perjury of one or more of the witnesses, ought to be confined within very narrow limits, and not entertained except in very peculiar cases. In many actions at law, the testimony of the witnesses is so irreconcilable with regard to matters clearly within their observation and knowledge, as to induce the belief that the one side or the other is assisted by willful perjury. If the judgment in each of such cases may be reopened or even

made the subject of further controversy in equity, on the ground that subsequent discoveries have placed the defeated party in a position to resume the contest with superior advantages and with a more reasonable expectation of convincing the court that the perjury was not on his side but on that of his adversary, then the jurisdiction of the courts of equity must be unduly enlarged, the province of determining the credibility of the various witnesses must be taken from the jury, and the hope of reaching some final determination of the rights of the parties must too often prove delusive." *Demeritt* v. *Lyford*, 7 Foster 541 ; *Gott* v. *Carr*, 6 Gill. & J. 309 ; *Dilly* v. *Barnard*, 8 Ib. 171. I have made this lengthy extract for the reason that it is so eminently in point in this case. Here is a dispute, somebody perhaps not telling the truth. Three juries believe appellant, and appellee seeks a court of chancery, where he thinks he has superior advantages, and where is the right of determining the credibility of himself and appellant, and the case is taken away from the jury, where it has already been settled.

The entire equity of the bill is sworn away by the answer, and under the general rule the injunction must fail. See *Richardson & May* v. *Lightcap*, 52 Miss. 508, and authorities cited. In that case the court says: "There is before proof taken something of discretion to be exercised according to the circumstances as to whether the injunction shall be retained or not." It seems then that this discretion is to be exercised only where no proof is taken, or, as I conceive, where no opportunity to take proof is had. Otherwise the complainant, having obtained his injunction, might sit still forever, for if confronted with a motion to dissolve he would simply say no proof is taken and the general rule cannot apply. In this case the injunction was served on appellant on 7th·of April, 1884, and the summons on April 21, 1884, to answer on 2d Monday in July, 1884. The answer of appellant was filed on September 5, 1884, as of July term—20th day of July. Any time after service of process—21st of April, or the day appointed for appearance—2d Monday in July, 1884 —appellee, complainant in court below, may take depositions. Section 1941, Code of 1880. Appellee, we find, has had about

ten months to take depositions to hearing of motion in January, 1885, and he takes none.

*J. H. Jones*, for the appellee.

In 2 Story's Equity Juris. it is said substantially that in all cases where unfair advantage has been obtained by fraud, accident, or mistake, equity will grant relief.

The same rule is recognized in 3 Daniell's Chancery Practice 1725, 1726 ; 1 Spence's Equitable Juris. 675 ; 1 Bispham Principles of Eq. 459 ; 2 White & Tudor's Leading Cases 1365, citing and quoting from 4 Cushman 341.

This last-mentioned authority, on p. 1333, says, that where an application is made for relief against a judgment the province of the Chancellor is to test the consciences of the parties, citing 23 Conn. 609 ; 6 Gill 391 ; 2 Stockton 178 ; 15 Missouri 435.

Justice Bronson, in *Vilas & Bacon* v. *Jones & Pierce*, 1 Conn., says, "where a party goes into a court of chancery after a trial at law he must be able to impeach the justice and equity of the verdict, and it must be upon grounds that either could not be made available to him at law, or which he was prevented setting up by fraud, accident, *or the wrongful act of the other* party without any fault on his part," and the same rule is laid down in *Johnson* v. *Lyon*, 14 Iowa 431. In our own State it was held in *Hiller* v. *Cotton*, 48 Miss. 602, that absence of counsel occasioned by sickness entitled party to relief. From all these authorities it is clear that while courts of equity are cautious in exercising a jurisdiction to restrain or annul judgments at law, yet they do exercise it, and the limits of its jurisdiction are tolerably well defined. We find that among other judgments obtained by "fraud, or the wrongful act of the other party," against which equity will relieve, one obtained by perjury is included. 2 White & Tudor 1328 and 1382, and cases cited.

Admitting, for the purposes of this argument, that all of the allegations of the bill are denied, it by no means follows that the injunction should be dissolved even if the bill was not supported by affidavits.

The dissolving of an injunction in such cases is entirely dis-

cretionary with the court, even at common law.    1 Waterman's
Evid. 134, note 3; Ib. 122, note 1; 12 Ga. 5; 3 Daniell's Practice
1787, and cases cited.

*Calhoon & Green,* on the same side.

It is settled that equity will grant a new trial, where a court of
law cannot, on the ground of *surprise* in adversary's testimony.
2 Hayne's New Trials, § 339, pp. 1010, 1011; 1 Ib., § 79; 1
Graham & W., New Trials, 4225; 3 Graham & W. 960.

In such cases the party may be guilty of slight negligence, and
still a new trial would be granted.    1 Ib., § 81, citing case
where a document had been read on two trials without objection
and on third trial objection was made to it and sustained, the party
having relied on it as evidence, a new trial will be granted.    9
Dana 27.

The party here was surprised by the change in the testimony of
the adverse witnesses—twenty miles from his place of business.

Equity will grant a new trial where the party has been taken
by surprise as to the evidence, or where evidence was produced
which he had no reason to believe would be produced.    3 Graham
& W. on New Trials 1531.

In *Webster* v. *Skipwith,* 26 Miss. 341, judgment had been ren-
dered at law, motion for new trial made and overruled, and an
appeal affirmed, when bill was filed for a new trial because of
*surprise.*    The court says: " But if surprise would have been a
good cause for a new trial, it would with more propriety constitute
ground of relief against an unconscientious claim in a court of
equity, and the cases are numerous where a court of law would not
grant a new trial in cases of this character, but courts of equity
have given prompt relief."

Where a party or his counsel are taken by surprise by a matter
which they could not reasonably have expected, and when the
want of skill, care, or attention cannot be justly imputed and
injustice has been done, a new trial will be granted.    *Dorr* v.
*Watson,* 6 Cush. 383.

The insolvency of the creditor, aside from all else, is ground for
the interference of equity to set off the debt of the insolvent

creditor by the debt due the solvent debtor. Waterman on Set-off, §§ 431–434; *Graves* v. *Hull*, 27 Miss. 422, 423.

It would be unconscionable to permit the insolvent creditor to collect his debt and leave the solvent debtor remediless.

CAMPBELL, C. J., delivered the opinion of the court.

The equity of the bill in its first and main aspect is fully met and completely overthrown by the answer which was filed on the 5th September, 1884, and although the motion to dissolve was not heard until more than four months afterward, the bill was supported only by the affidavits of the complainant and his two clerks, Davis and Norman, all of whom were witnesses in the trials at law, while the answer is supported by the testimony of the defendant and Cage, who were witnesses in the trial at law.

On this branch of the case it stood before the Chancellor precisely as it was before the jury in the trial complained of, and it is not allowable for a chancery court to sit in judgment on the correctness of the finding of a jury in a court of law and, *on the same presentation that was before the jury,* to reverse and vacate its finding.

There was no sufficient showing for the failure of the complainant to take testimony to support his bill.

The bill does not show a ground for the interposition of a chancery court to set off the demands alleged by the complainant to be held by him against the defendant. It is true that the defendant is insolvent; but unless the demands sought to be set off were held by the complainant at such time as to have made them available to him as a set-off at law in the litigation between himself and the defendant, they cannot in the absence of any special equity be made the ground of interference by a court of chancery. *Condon* v. *Shehan,* 46 Miss. 710.

No special equity is averred by the bill; it rests as to this solely on the averment of the acquisition of the demands by the complainant since the beginning of the litigation at law between the parties, and one of them is alleged to have been obtained since the rendition of the judgment against which it is sought to be used as a set-

off. Insolvency may be an important factor in supporting an appeal to chancery to make available a set-off under certain circumstances, but it is not a ground to maintain a bill by one who, after litigation begun between himself and another, acquires demands against the insolvent with which to pay him off.

*Decree reversed, injunction dissolved, and cause remanded to the chancery court.*