SARAH CROFTON ET AL. *v.* NEW SOUTH BUILDING AND LOAN
ASSOCIATION.

1. BUILDING AND LOAN ASSOCIATION. *Nonresident. Fixed premium.
Usury.*

The contract of a nonresident building and loan association is
usurious when the sum of the fixed premium, and the interest
on the loan, exceeds ten per centum per annum. *Sokoloski* v.
*New South. etc., Association,* ante, p. 155.

2. REFORMATION OF CONTRACTS. *Deed. Evidence.*

The reformation of a deed so as to include more land, is unwar-
ranted in the absence of convincing proof that such was the
intention of both parties to the grant.

3. USURY. *How determined.*

Usury is determined by what the creditor has the right, accord-
ing to the terms of the contract if enforced, to demand in any
situation during its life, and not by what he may ask under an
accidental situation.

FROM the chancery court of Warren county.

HON. WILLIAM C. MARTIN, Chancellor.

The appellee, the New South Building & Loan Association,
was the complainant in the court below; the appellants, Sarah
Crofton and her sister, appellants, were defendants there.

The appellants became the owners of fifty shares of "series
B" stock in appellee association, for which they paid the
entrance fee of one dollar per share. They then borrowed
five thousand dollars from the association, and executed their
promissory note therefor, May 30, 1895, maturing March 30,
1907. The note on its face bears six per centum interest per
annum from date, and recites that it is subject to all the terms
and provisions of a certain deed of trust of even date, by which
it is secured. It refers to the deed of trust for an explanation of
its terms and provisions. The deed of trust recites that the

interest on the note is payable on the last Saturday in each month succeeding its date, at the rate of six per centum per annum, and that it is subject to the charter, constitution, and by-laws of the association.   It recites further that if the appellants should pay said note in accordance with its terms, and with the charter, constitution, and by-laws (which are made part of the deed of trust), and should perform all other acts and undertakings, agreements, and obligations therein set out, the conveyance was to become null and void. It provided that if the appellants should fail to perform its conditions, and all duties imposed upon them as members of said association by its charter, constitution, and by-laws, the promissory note, at the option of the association, should become immediately due, except that the appellants should have thirty days after default to reinstate themselves by the full performance of all such conditions and duties.   In case of such default the trustee was authorized to make sale of the property.   It was also stipulated in the trust deed that the appellants were to keep insured the buildings on the property covered by it, the insurance to be payable, if any loss occurred, to the association; that the appellants should pay all taxes which might be assessed against the property, and that in the event the appellants should fail to insure the property or pay all taxes, the association was authorized to take out insurance and pay the taxes, and the amount which might be expended by it in this manner was made part of the debt secured by the trust deed, and was to bear interest from the date of payment at the rate of six per centum per annum.   The trust deed declared the appellants to be members of the association and owners of fifty shares of its capital stock, and stipulated that to further secure said indebtedness, said shares of stock, with all installments of money then paid, or to be paid on it, were pledged to the association.   By the terms of the deed appellants bound themselves to pay at the office of the association on the last Saturday

in each month until they paid said note by the maturity of their stock, or otherwise, seventy cents per share, amounting to thirty-five dollars for all of the shares. It was stipulated that if the appellants should pay the interest on said note monthly, and should also pay the dues upon their stock as they became due each month, the principal of the note should not become exigible until the value of said fifty shares of stock, with dividends and accumulations thereon, should become equal to the amount of said note, with all interest and costs that might be due upon it. When that should occur the stock and indebtedness were to cancel each other, and be alike extinguished. It was stipulated that if the appellants, for the term of thirty days, should fail or neglect to pay said installments of interest, or dues, or any portion thereof, or any taxes or insurance that might be paid by the association, the said promissory note, with all interest which might be due, should, at the option of the association, become immediately payable, in which event the association was to have the right to take possession of and sell the property described therein. It is further stipulated that, notwithstanding the appellants had transferred their shares of stock to the association, the said shares should, in case of default, be sold for arrearages, as provided in the charter, constitution, and by-laws.

Default having been made by appellants, the trustee, in the deed of trust, sold the property as therein provided, and it was bought in by the association at the price of five thousand nine hundred and eight dollars. After the sale the association claimed to have discovered that the description of the property was defective, and that the deed did not convey as much land as it was agreed it should, and as both parties when it was executed thought it did.

Thereupon, August 3, 1897, the association filed its bill in this case, setting up the facts, and praying that the sale made by the trustee might be annulled and declared of no effect; that the trust deed be so reformed as to effectuate the intention

of the parties; that an account be taken of the amount due to it by the appellants: and that a decree be entered for the sale of the property.   Defendants demurred to the bill, and their demurrer was overruled.   They then answered the bill, and their answer set up a general denial of all the allegations in the bill; defendants made their answer a cross bill, in which they averred that the association was a foreign corporation; that the contract of loan was usurious, and therein contrary to the laws and policy of the state of Mississippi; and that they were entitled to a decree declaring the deed of trust, and the deed made by the trustee in purusance of the sale made by him, to be null and void.   They prayed that, if mistaken in this, the loan be decreed to be usurious and all interest forfeited; that the sale made by the trustee as aforesaid be held to be valid and binding, and that a decree against appellee be entered in their behalf for nine hundred and eight dollars, the excess of the association's bid over the principal sum borrowed.   To this cross bill the association made due and proper answer.   Testimony was taken on both sides, and on the final hearing it was decreed that the sale made by the trustee be annulled, and that the appellants were indebted to the association for the amount of said note, with six per centum interest from date; for the amounts which it had paid out for city, county, and state taxes; for monthly dues on their fifty shares of stock from June 1, 1895, to May 31, 1896, amounting to forty-two dollars; and for fines for nonpayment of dues for ten months, amounting to fifty dollars.   A credit of three hundred and sixty dollars, which was declared to be the withdrawal value of the shares of stock on May 31, 1896, was allowed to appellants.   It was also decreed that an attorney's fee should be paid, in accordance with the stipulations of the note and deed of trust.

It was further decreed that the deed of trust should be reformed so as to include all of the property of the appellants, which the association had claimed it was the purpose of both

parties to have the deed cover, and a commissioner was appointed to make sale of the property in the usual way.

From this decree the defendants, Mrs. Crofton and her sister, appealed to the supreme court.

*Magruder & Bryson,* for appellants.

The assignment of errors present two principal questions for consideration:

(1) Did the facts justify reformation of the deed in trust?

(2) Was the contract of loan usurious?

*First.*—To justify the reformation of the deed of trust it must appear that by fraud, accident, or mistake, it contains stipulations variant from that to which the parties assented. *Norton* v. *Cooley,* 45 Miss., 125.

The deed of trust must be accepted as the complete evidence of the agreement until it is shown that by accident, fraud, or mistake it omits the land in dispute, and which it is sought to include by enlargement of the description. *Dunbar* v. *Newman,* 46 Miss., 231; *Wilczinski* v. *Louisville, etc., R. R. Co.,* 66 Miss., 595.

Says the court in the latter case: "Courts cannot impose on one contracting party the burden of an agreement into which he did not intend to enter to protect the other in supposed rights he intended to reserve or acquire, when the exercise of the slightest care would have discovered that by his contract, as written, such rights were not only not reserved, but, by necessary implication, were denied."

It might be that appellee was mistaken as to the land covered by the description, and considered that it embraced the forty feet now sought to be included, and that, except for such mistake of fact, would have declined to make the loan, but that does not afford ground for relief. *Wise* v. *Brooks,* 69 Miss., 891. Says Chief Justice Campbell, in delivering the opinion of the court in that case: "Unfortunately for complainants, they have failed to maintain their bill by sufficient evi-

dence. It is doubtless true, that but for misapprehension as to the extent of the operation of the deed, the parties would have proceeded differently."

Admitting that both Paxton and Evans were mistaken, and that they each considered that the description in the application embraced the whole lot and took in all the houses, their mistake alone affords no ground for relief unless it was caused by the fraud of appellants. The evidence of mistake or fraud must be clear and unmistakable. *Phoenix Insurance Co. v. Hoffheimer,* 46 Miss., 645. Pomeroy's Equity Jurisprudence lays down the rule as to the degree of proof required, even stronger, if possible, than this case. In sec. 859 the rule is given as follows: "The authorities all require that the parol evidence of the mistake and of the alleged modification must be clear and convincing, in the language of some judges the strongest possible, or else the mistake must be admitted by the opposite party, the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of evidence, but only upon a certainty of the error."

*Second.*—The contract is usurious. The loan in this case was agreed to be paid back in one hundred and forty-two monthly payments of sixty dollars each, of which thirty-five dollars was to be applied as dues on the stock, and twenty-five dollars as interest on the loan, which was at the rate of six per centum per annum. In addition to the monthly payments, it provided that an initiation fee of one dollar per share should be paid for each and every share issued. Fifty shares were required to cover the loan, so the initiation fee was fifty dollars, which made the sum necessary to pay up the stock five thousand and twenty dollars. From which it appears that the stock not only did not participate in the profits, but was required to be overpaid by twenty dollars.

At the expiration of 142 months the stock was to be taken

in payment of the debt, the stock paying the debt and the debt paying the stock. If the contract had been carried out as written, appellants would have paid appellee the sum of $5,020 as initiation and dues on the fifty shares of stock, for which the appellee would be indebted at the end of 142 months to appellants in the sum of $5,000, the value of the stock at maturity, and appellants would, at the same time, be indebted to appellee in the sum of $5,000 on the loan, and the two debts would mutually offset each other.

In the meantime appellants would have been paying monthly twenty-five dollars as interest on the loan—that is to say, appellee would be collecting each month the interest on the whole loan, and at the same time collecting the one hundred and forty-second part of the principal. The principal at the beginning of the loan, on May 30, 1895, was $5,000. Under the contract $35 of dues were due and payable June 1, on July 1 $35 more, and August 1 $35 more, and so on for the 142 months when the whole $5,000 would be returned. Under this scheme, when the first payment, or June dues, had been paid there would remain of the principal $5,000, less $35, or $4,965, and when the July dues had been paid, $4,965, less $35, or $4,930, and when the August dues had been paid, $4,930, less $35, or $4,895, and so on till the last monthly payment had been made, when nothing would remain, the principal diminishing monthly by $35. It is clear that appellants would not have had the use of $5,000 for the full 142 months, but only for the first month, while they would have had nothing at all during the last month. The average sum in their hands would, therefore, have been $2,500. Yet, under the contract, they were to pay $25 a month interest through the whole term, the same the last month, when the whole principal had been returned, as the first month, when none of it had been returned. Since the average sum in the use of appellants was only $2,500, or one-half of the sum on which the interest was calculated, it follows, necessarily, that the actual rate they were to pay was double the nominal

rate specified in the note, which was six per centum, making the actual rate twelve per centum.

Considered with reference to time, appellants would not have the use of all the money for the full period of 142 months.

The first payment is returned when the loan is made, hence appellants would have the use of that sum for zero time, the second payment is returned at the beginning of the second month, the third for the period of two months, and so on to the last, which appellants would have for the period of 142 months. It is therefore clear that the average time they would have the use of the whole would be one-half of the entire period, or seventy-one months, which would make the rate of interest just double the nominal rate. Any way we consider it, the contract was for a loan at twelve per centum per annum interest. *Fidelity Savings Ass'n* v. *Shea* (Idaho), 55 Pac. Rep., 1022.

That appellees so understood and construed the contract is manifest from the fact that they inserted in the application the provision that appellants, in consideration of the loan, agreed to pay six per centum on the money actually received by them, and also six per centum premium thereon, making twelve per centum simple interest.

It might be argued that it was a contract for the payment of $60 per month without reference to its application whether to the payment of dues or interest. Accepting this hypothesis, and applying the rule for partial payments, still the contract appears usurious, because when the calculation is made at ten per centum, and the monthly payments of $60 are deducted, nothing will remain after 133 monthly payments have been made, which is nine months less than the contract calls for. This shows conclusively that whatever the rate may be it is above ten per centum per annum.

The contract being a Louisiana contract should be construed according to the decisions of that state. However, the Louisiana decisions present no case involving the exact question presented by this contract. In the case of the *American Home-*

---

---

*stead Co.* v. *Linigan,* 15 So. Rep., 369, the court decided that interest on the premium was not usurious, and in the case of *Richard* v. *Southwestern Building Ass'n,* 21 So. Rep., 643, the court decided that the loan was not, necessarily, usurious where the defendant was required to pay back in stock double the sum actually borrowed. The ground upon which each of these cases was excepted from the usury law was that the stock which the borrower was required to subscribe for, and which, at maturity, was to pay the loan, participated fully in the profits of the association, and since the profits accruing to the stock could not be determined until its maturity, the court could not say that such profits would not be sufficient to reduce the sum paid as interest below the legal rate. The stock of appellants in the case at bar did not participate in the profits. The above cases, therefore, not only fail as authority to maintain this contract, but, inferentially, to condemn it as usurious. The logical deduction from those decisions is that the contracts are not usurious by reason of the single element that the stock participated in the profits. The converse must follow that, in the absence of such participation, the contract would be usurious. So, applying the law of Louisiana, the contract is doomed alike to the same fate.

*Catchings, Hudson & Catchings,* for the appellee.

The evidence is very clear and convincing, and fully justified the action of the court below in decreeing a reformation of the deed of trust.

The note in this case is payable in Louisiana, and the contract is subject to, and governed by, the interest laws of that state.

Under the ruling in the case of *Bank* v. *Auze,* 74 Miss., 609, and *Brown* v. *Freeland,* 34 Miss., 181, it is held that the presumption that parties intended to contract with reference to that law which their contract did not violate, must yield to their actual intention when clearly shown.

We think it can be demonstrated that the contract is entirely

free of all semblance of usury. The stock certificate expressly declares on its face that it was "issued and accepted by the stockholder, subject to all conditions and limitations contained in the charter and by-laws of this association, and such conditions and limitations form part of this certificate."

It also declares on its face that "the contract between this association and its members is contained in its charter and by-laws, and cannot be changed or altered by any agent or officer of this association." By sec. 8, art. 2, of the by-laws, it is declared that each certificate of "series stock, class B," is to mature when one hundred and forty-two monthly installments of dues on the same shall have fallen due and been paid, and that stock in class B shall not participate in the earnings of the association beyond the amount necessary to mature it when dues on the same have been paid for one hundred and forty-two months. From this it is argued by appellants that stock in class B does not partake in any sense whatever of any profits or earnings, and that, consequently, it is not stock in any just sense of the word at all, but a mere contrivance to enable the association to get back from each borrower of money seventy cents per month on each share of such stock owned by him, and, at the same time, to collect interest monthly on the whole loan as though it had remained in the possession of the borrower.

While the stock in class B does not participate in the earnings of the association as such, yet the charter and by-laws do contemplate the existence of an indefinite and indeterminate fund, of which stock of class B does partake. As we explained in the outset, whenever, in any case, payments upon stock have been in arrears for six months or more, such stock must be sold at auction for the purpose of paying arrearages. If such stock does not bring enough to pay what is due upon it, it must be bid in by the association, and canceled, and the amounts standing to the credit thereof in the series stock fund are to be divided among the other shares of series stock as profits. Of

course, in a business such as that transacted by the appellee, there would, necessarily, be numerous instances in which stock would be sold under this provision of the charter and by-laws, and by that means a very considerable fund might be created for division among those who owned the series stock. It will be observed that all holders of series stock, whether in class A or B, or in any other class, are, by the terms of the charter and by-laws, entitled to share in the division of the fund so created. Inasmuch as no man can foretell what the extent of such fund, at any time may be, so no man could foretell, when this contract was entered into, what amount of money under this provision of the charter and by-laws would be apportioned to the appellants. *Non constat,* but that a very large sum of money under this provision of the charter and by-laws might become due to the appellants, and so the ultimate amount which they would be required to pay for the purpose of canceling their indebtedness, with interest, might be very much less than the principal with even so low a rate of interest as six per centum. That such a participation in the profits was contemplated is made manifest by the terms of the trust deed, which expressly declares that the principal of the note given by the appellants should not become exigible "until the value of said fifty shares of stock, with dividend or accumulations thereon shall become equal to the amount of said application, with all interest and cost that may be due upon the same." So, while it may be true, as stated in sec. 8, art. 2, of the by-laws, that stock in class B does not participate in the earnings of the association proper, it is equally true that such stock does participate in whatever fund may be created by the failure of series stockholders to keep their stock paid up and this possible profit which might come to them, being uncertain and indeterminate, no man can say whether the net result of the transaction would, or would not, be to make them return the principal of the loan, with a greater rate of interest than they might have lawfully contracted for.

The question of usury does not arise in this cause for another reason. While the whole transaction between the appellants and the New South Building & Loan Association is described in one writing, yet there were, in fact, two separate and distinct contracts, in so far as the repayment of the five thousand dollar loan is concerned. First, there was the contract by which the appellants bound themselves to repay it by making monthly payments, as interest, of twenty-five dollars, and by making monthly payments, as dues, of thirty-five dollars, until one hundred and forty-two payments had been made. This was subject, however, to such reductions as might result from their participation in the fund which might be created, as we have already explained, through the failure of stockholders to meet their dues.

Another and separate contract was, that if the appellants should fail to make the monthly payments described, or to keep the taxes and insurance paid up, the building association, at its option, might declare the whole debt due, and proceed by proper legal remedies to collect it. In such event all question as to the payment of dues, or the continuance of monthly payment of interest, became absolutely eliminated, and the sole right of the building association was to exact the return of the five thousand dollars loaned, with six per centum interest.

In the case at bar, by reason of default on the part of plaintiffs in making the monthly payments provided for, the building association did exercise its option, and declared the whole debt due. Having done this, there existed between them and the appellants nothing but an obligation on the part of the latter to return the five thousand dollars, with six per centum interest.

And all the proceedings taken by the building association have been solely for the purpose of securing the return to themselves of the five thousand dollars, with six per centum. They do not claim the right to receive, and are not attempting to ex-

act, from the appellants anything except the five thousand dollars loaned them, with six per centum interest.

Argued orally by *L. W. Magruder* and *J. C. Bryson,* for appellants, and by *T. C. Catchings,* for the appellee.

WHITFIELD, J., delivered the opinion of the court.

Critical and repeated examination of the testimony makes it impossible for us to concur in the finding of the chancellor that the trust deed should be reformed. The testimony falls far short of the convincing character of proof required for that purpose under our decisions.

It may be that the appellee's agents thought the whole lot That the quitclaim deed of November 21, 1896, generally not so intend. As to the usury, we have held in *Sokoloski* v. *New South Building & Loan Association,* opinion this day delivered by Brother Terral, that a fixed premium of six per centum, together with a further charge of six per centum as interest, *eo nomine,* makes the building and loan contract usurious. See that opinion, *ante,* p. 155. The application in this case made part of the contract, recites: "That the loan hereby applied for shall bear six per centum per annum interest, and to procure said loan I also bid, as a premium, six per centum per annum on the amount so loaned me." It is true in the contract of subscription they agree to certain stipulations in consideration, as recited, of their "right to pay no premium on their loan whatever, unless they repay same voluntarily before 142 months from the date of their stock, and that in case of such voluntary repayment, then they were to pay premiums" at stipulated fixed rates. Taking these features of this contract together, with the facts of record, it is plain this was a fixed premium of six per centum per annum. That is the real transaction, however named. It is very questionable whether this series B stock, without any voting power, sharing not at all in the earnings or dividends proper, but only in such sums as have been paid in, or forfeited stock sold

and bought in by appellee, in certain cases, can be held to be real stock of the corporation in any just legal sense; and if not, whether it is not a mere disguise for a straight loan for the 142 months. One of the answers made by appellee is to the effect that as there is an indefinite and indeterminate fund of which stock B may partake, it cannot be known in advance that, on this line of reasoning, the rate will be usurious.

The supreme court of Tennessee, in *McCauly* v. *Workingman's B. & L. Association*, 35 L. R. A., p. 248, responds to this suggestion as follows: "The contract upon its face being unauthorized, illegal, and not warranted by law, the court will not compel the borrower to continue it for years, meeting its exactions of fines and dues, and interest, upon a possibility that, perchance, in the final wind up, the borrower may be shown to have paid no more than legal interest." The suggestion that the option to declare the whole loan due, and that in that case the appellee wants nothing in this particular case but $5,000 and six per centum interest, cannot change the essential nature of the contract taken as a whole. Suppose the loan had run 140 months, would the appellee have wanted only $5,000 and six per centum interest? The accident of the situation in the particular case, that only one month's interest, dues, etc., have been paid, and that hence, in this case the loan and six per centum interest is all that the appellee can be regarded as asking for, is not determinative at all of the character of the contract as usurious or not. That is to be resolved by what the appellee would have the right, under the terms of the contract, in any situation during the life of the contract to do, not by what it may ask as the result of any accidental situation. But without now deciding on these last features of this very unusual character of building and loan contract, we rest the usurious character of this contract on the feature of the fixed premium. As the appellee invokes the equity jurisdiction, and to enforce the usurious contract, it follows that the appellee is only entitled to the amount actually loaned without interest,

and the sums advanced for taxes and insurance with six per centum interest per annum. *Dickerson* v. *Thomas,* 67 Miss., 777, and authorities.

The attorney's fee feature of the contract falls with the contract, and cannot be enforced. *Mortgage Co.* v. *Jefferson,* 69 Miss., 770.

We do not think it would be equitable to reinstate the trust sale and deed thereunder, and charge the appellee with the $908 excess of the bid, since the appellee may have thought it was contracting for a trust deed on the whole lot.

*The decree is reversed, and cause remanded to be proceeded with in accordance with this opinion, with instructions to have an account stated, and the legal amount due established, and a sale made to pay the same under the terms as to notice, etc., of the original trust deed.*