CHANDLER *v.* COOKE.

(Division A.   Nov. 16, 1931.   Suggestion of Error overruled April 18, 1932.)

[137 So. 496.   No. 29499.]

148

Somerville & Somerville, of Cleveland, McClellan & Tubb, of West Point, and G. G. Lyell, of Jackson, for appellant.

Shands, Elmore & Causey, of Cleveland, for appellee.

Argued orally by **G. G. Lyell,** for appellant, and by **H. H. Elmore,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

On January 19, 1918, J. W. Cooke wrote the appellant a letter, the part thereof material hereto reading as follows: "I owe a note for thirty thousand dollars and can get a discount of six per cent to anticipate same, after this payment I will owe considerably more money on the property, but it is strung out in small annual payments and at a low rate of interest, and I expect to make the property meet the same. I have agreed to pay this thirty thousand dollars and make this one thousand eight hundred dollars, but in order to do so would have to 'ride' my friends and business associates; therefore, have decided to make you the following proposition: If you will loan me twenty-five thousand dollars, I can pay the three thousand two hundred dollars and will divide the 'rake off' of one thousand eight hundred dollars equally with you and you will collect the nine hundred dollars in cash, thus leaving you to pay out only twenty-four thousand one hundred dollars, I will make you three notes, one for ten thousand dollars due November 15th, one for ten thousand dollars due December 20th, and the other for five thousand dollars due January 1st, bearing six per

cent interest (the same rate that I am paying on the thirty thousand dollar note and I want to get this paper in other hands) besides, I am saving nine hundred dollars on the transaction and making you the same amount.''

On receipt of this letter, Chandler called Cooke over the telephone, and agreed to make the loan requested, to be secured by a deed of trust on land, including that here in controversy.

On January 23, 1918, Cooke again wrote Chandler as follows: ''Referring to my letter of the 19th instant, and in compliance with your phone message, I have prepared the notes and mortgages as best I could. . . . If these papers are satisfactory you may place the amount twenty-four thousand one hundred dollars to my credit and I will send check for the twenty-eight thousand two hundred dollars that I am to pay, for am anxious to get my matters out of this party's hand, as do not like to have any paper peddled over the country and had rather divide the 'rake off' with you than to 'strain' my credit to raise the funds elsewhere—besides would have had to pay eight per cent unless had taken time to arrange a loan.''

Three notes were inclosed in this letter, one for ten thousand dollars due November 15, 1918, one for ten thousand dollars due December 20, 1918, and one for five thousand dollars due January 1, 1919; each bearing interest at six per cent per annum from date.

Chandler deposited the twenty-four thousand one hundred dollars to Cooke's credit in a bank, and Cooke used it in paying the thirty thousand dollar note referred to in his first letter to Chandler.

The money represented by these three notes was never paid, the debt being kept alive by extensions and renewals, the renewal notes for some of the extension periods bearing interest at eight per cent, and for other extension periods bearing six per cent per annum from the dates thereof.

In 1922 Myrtle Cooke, wife of J. W. Cooke, purchased the land covered by the deed of trust securing these notes from Cooke.

The last notes of this series were signed and delivered by both of the Cookes on January 23, 1928, and included all or the greater part of the principal of the original notes, the interest only thereon being theretofore paid.

On September 16, 1929, this deed of trust was foreclosed, and the property purchased at the foreclosure sale by the appellant, for twenty-three thousand dollars, an amount insufficient to pay the notes secured by the deed of trust. Afterwards the appellant exhibited an original bill against the Cookes, the purpose of which was to recover from them the balance due him on their notes. They answered this bill, making their answer a cross-bill, alleging usury in the notes executed in 1918, resulting in the interest payments being applicable to the principal of the debt; and when this is so applied, the debt due on the notes at the time of the foreclosure would be less than the amount the land sold for thereat, for which the bill prayed for a judgment against the appellant in favor of Mrs. Cooke, the owner of the land.

The decree was in accordance with the prayer of this cross-bill.

The money actually paid Cooke by the appellant on his three notes aggregating twenty-five thousand dollars, bearing six per cent interest from their date, being only twenty-four thousand one hundred dollars, that loan is admittedly prima facie usurious.

Counsel for the appellant say that this prima facie case is overcome by evidence which discloses that the nine hundred dollars deducted by Chandler from the face of the note was no part of the compensation received by the appellant or the use of the money loaned.

In support of this they say the nine hundred dollars was

(a) In effect a bonus paid the appellant by a third person for making the loan; or

(b) Was profit from a joint adventure entered into by Cooke and the appellant; or

(c) Was compensation to the appellant for services rendered Cooke in connection with the making of the loan.

The nine hundred dollars could not have constituted at the same time a bonus, profit on a joint adventure, and compensation for services. It could have constituted but one of the three, which counsel did not say. But that aside, and coming to the merits of each of these contentions, it is clear from the contract set forth in the letter, even if it be supplemented by the telephone conversation, that the nine hundred dollars was not paid to Chandler, or to Cooke for him by the holder of the thirty thousand dollars note, but was a part of the discount thereon allowed by the holder to Cooke, which he had agreed to pass on to Chandler as part of his compensation for making the loan.

The transaction shows none of the ear-marks of a joint adventure, one distinctive feature of which is that neither or none of the joint adventurers are liable to the other, or others, for the repayment, at all events, of the money advanced by one or more of them for use in the joint adventure. If such liability is assumed, the transaction ordinarily is one of lending and borrowing, and not a joint adventure. 33 C. J. 842; Duval v. Neal, 70 Miss. 288, 12 So. 145; Commercial Bank & Trust Co. v. Joiner, 114 Miss. 749, 75 So. 599.

The only service the appellant claims to have rendered Cooke in connection with the loan is that he borrowed, at some inconvenience to himself, part of the money with which to make it. Cooke's written offer to the appellant contains no promise to pay Chandler for any trouble and inconvenience he might be put to in obtaining the money with which to make the loan, and a promise so to do cannot be implied from the fact that thereafter, in the tele-

phone conversation, the appellant told Cooke it would be necessary for him to borrow the money.

But counsel for the appellant say he deducted the nine hundred dollars from the money loaned by him to Cooke in good faith, at Cooke's suggestion, without any intention of violating the statute, and therefore the loan should not be held to be usurious. In Planters' Bank v. Snodgrass, 4 How. 573, it was said: "In order to constitute the offense of usury, there must be an agreement between the lender and the borrower of money, by which the latter knowingly gives or promises, and the former knowingly takes or reserves, a higher rate of interest than the statute allows, and with an intention to violate the statute." This does not mean that the parties must know of the statute and intend to violate it, for ignorance of or temporarily overlooking a statute will not excuse the doing of what the statute prohibits. Hebron Bank v. Grambrell, 116 Miss. 343, 77 So. 148. It simply means that the parties must intentionally do the thing which the statute prohibits. Smythe v. Allen, 67 Miss. 146, 6 So. 627. "The law presumes the necessary unlawful intent from the mere fact of intentionally doing what is forbidden by the statute. It is not necessary that the parties shall know that in so doing they are violating the law. Innocent ignorance is just as fatal to their contract as conscious wrongdoing." 39 Cyc. 920; Carter v. Holloway (Miss.), 28 So. 941.

Counsel for the appellant say that in event the original loan should be held to be usurious the renewals thereof have operated to purge it of usury. None of the renewal notes were for the amount of the actual debt then due after deducting from the original debt the amount of all interest paid thereon. That which counsel say purges the loan of usury is this: (1) Had the due date of the original notes been that which was afterwards made the due date of the first renewal notes, the loan would not have been tainted with usury, the nine hundred dollars deducted

therefrom being insufficient in amount so to do; (2) that it appears from the conduct of the parties that they did not contemplate the payment of the original notes when due; and (3) that the execution of new notes in renewal of the original notes made the loan in legal effect, in so far as the payment of interest is concerned, the same as if the due date of the original notes had been that of the renewal notes; "that the contract is just as good when made at the end of the period as when made at the beginning of the period."

Section 1946, Code of 1930, expressly provides that, "if a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory." It will be observed that the words "stipulated for" and "received" are not here separated by the conjunctive "and," but by the alternative "or," from which it necessarily follows that where more than eight per centum interest is stipulated for, the loan is thereby rendered usurious, and all interest paid thereon may be recovered by the borrower, although the interest actually paid is within the legal rate. Crofton v. B. & L. Ass'n, 77 Miss. 166, 26 So. 362.

After the filing of the cross-bill, the appellant purchased a note executed to another by the Cookes for the sum of fifty thousand dollars, on which there remained unpaid something over twenty-five thousand dollars, paying therefor the sum of two hundred ninety-two dollars. When this note was purchased, the Cookes were then, and are now, insolvent. The appellant sought, but was not permitted, to use this note as an offset against the amount demanded from him by the appellee. His counsel admit that as a general rule a claim against a plaintiff or complainant cannot be used by the defendant as a set-off in an action at law or suit in equity commenced before the defendant purchased the claim, but they say that in equity

the insolvency of the complainant is ground for an exception to this rule.

While there is authority to the contrary, this court has aligned itself with those courts which hold that insolvency alone is not a sufficient equity to justify the allowance of an otherwise incompetent set-off, but that there must exist circumstances in addition to insolvency which render it inequitable not to allow the set-off. Condon v. Shehan, 46 Miss. 710; Desearn v. Babers, 62 Miss. 421; 34 Cyc. 640. No such circumstances exist here. The appellant purchased the note for a mere song, which of itself charged him with knowledge that it was not collectible by ordinary legal processes, and it is clear from the evidence that his purpose in so doing was solely to use it as a set-off against the appellee's demand against him. In this respect the case is strikingly similar to the Condon case. See, also, Posey v. Maddox, 65 Miss. 193, 3 So. 460; Field v. Coleman, 72 Miss. 545, 17 So. 378; McIntyre v. Forbes, 100 Miss. 517, 56 So. 457; Sterling Products v. Watkins, 131 Miss. 145, 95 So. 313; and Bettman-Dunlap Co. v. Gertz, 149 Miss. 892, 116 So. 299.

This brings us to the contention of counsel for the appellant that in no event should a judgment have been rendered for Mrs. Cooke. In support of this contention they say that the borrower alone can complain of usury, and that Mrs. Cooke was not a party to the original notes and made no payments on the loan other than "the amount received from the foreclosure of the trust deed." Leaving out of view the fact that Mrs. Cooke signed the last of the renewal notes, the usury in the original notes is available to her for the reason that the renewal notes were secured by a deed of trust on her property, under which the property was sold and the proceeds applied to the payment of the usurious debt, without which usury less of the proceeds of the property would have been required for the payment of the debt. The defense of usury is always available to the owner of the equity of redemp-

tion in property on which there is a lien securing the payment of the usurious debt. Boyd v. Warmack, 62 Miss. 536; Chaffe v. Wilson, 59 Miss. 42; McAlister v. Jerman, 32 Miss. 142. See, also, Spinks v. Jordan, 108 Miss. 133, 66 So. 405, L. R. A. 1915C, 634.

The other assignments of error are not of sufficient merit to require a specific response thereto. Affirmed.